# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| PRESTON EDWARDS,<br><br>Plaintiff,<br><br>v.<br><br>ABC TOWING, LLC, THE KING LOCKSMITH, LLC, and JASMIN BITON,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff Preston Edwards, by and through his undersigned counsel, and hereby brings this action against Defendants ABC Towing, LLC, The King Locksmith, LLC, and Jasmin Biton.

## NATURE OF THE ACTION

1.   Plaintiff Preston Edwards ("Edwards") brings this action under the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201 et seq., against Defendants ABC Towing, LLC ("ABC Towing"), and The King Locksmith, LLC ("King Locksmith") (collectively "Defendant Corporations"), and against their individual corporate officer, Jasmin Biton ("Biton" or "Corporate

1

Officer"), alleging that Defendants willfully failed to compensate Plaintiff at time and one-half for all hours worked in excess of forty (40) hours per week.

2. As a result of Defendants' failure to comply with FLSA's mandatory precepts, Defendants are liable, jointly and severally, to Plaintiff Edwards for all unpaid overtime wages, an equal amount of liquidated damages, and reasonable costs and attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

4. Venue is proper pursuant to 28 U.S.C § 1391(b) and Local Rule 3.1(B)(3) in the Atlanta Division of the Northern District of Georgia because (1) a substantial part of the events and omissions giving rise to the claim occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

5. Defendants employed Plaintiff who handled, sold, and otherwise worked on goods and/or materials that had been moved in or produced for commerce.

6. For example, in order to perform his work, Plaintiff (1) used a truck that had been manufactured outside of the State of Georgia; (2) Defendants accepted credit card payments, which required use of out of state communication

lines; (3) a percentage of the vehicles that Plaintiff towed had out of state license plates; and (4) routinely used chains, jumper cables, gas, and wrenches.

7. Defendant Corporations constitute a "single enterprise," engaged in commerce, with a collective annual gross volume of sales made or business done in excess of $500,000.

## PARTIES

8. Plaintiff is a former, nonexempt "employee" of Defendants.

9. Defendant ABC Towing is a Georgia company with its principle office located at 3851 Holcomb Bridge Road, Suite 300, Norcross, Georgia, 30092.

10. Defendant King Locksmith is a Georgia company with its principle place of business located at 2526 Mount Vernon Road, Suite 304, Dunwoody, Georgia 30338.

11. Defendant Biton, a Georgia resident, is the Chief Executive Officer, Chief Operating Officer, shareholder, and co-owner of Defendant ABC Towing, LLC, and The King Locksmith, LLC.

12. Defendant ABC Towing may be served with process by delivering a copy of the Complaint and Summons to its registered agent, Zachary Eastman, at 1230 Peachtree Street, N.E., Atlanta, Georgia, 30309.

13. Defendant King Locksmith may be served with process by delivering a copy of the Complaint and Summons to its registered agent, Zachary Eastman, at 1230 Peachtree Street, N.E., Atlanta, Georgia, 30309.

14. Defendant Biton may be served with process personally at her home address, at her office address, or wherever she may be found. Alternatively, Defendant Biton may be served with process by leaving a copy of the Summons and Complaint with someone of suitable age and discretion residing at her home address.

## FACTUAL ALLEGATIONS IN SUPPORT OF CLAIM THAT DEFENDANT CORPORATIONS CONSTITUTE A SINGLE ENTERPRISE

15. Defendant Corporations are entities jointly owned and operated as a single enterprise.

16. Defendant Corporations are a unified operation under the common control of Defendant Corporate Officer for a common business purpose.

17. For the relevant years in question, Defendant Corporations have been engaged in commerce, with a collective annual gross volume in excess of $500,000.

### I. Related Activities.

18. Defendant ABC Towing is primarily engaged in hauling, towing and transporting automobiles, wrecking services, and "lockout services." ABC Towing

also provides various emergency roadside services, including assistance with flat tires and vehicle jump starts.

19. Defendant ABC Towing's online website provides a hyperlink to King Locksmith's website and states that King Locksmith is a "Business Partner[]."

20. Defendant King Locksmith is primarily engaged in the locksmith business; that is, it provides locksmith services to commercial and residential businesses as well as persons who have been locked out of their vehicle.

21. Defendant Corporations each provide emergency services related to automobile lockouts and employs persons trained in commercial and vehicular security systems.

22. Defendant Corporations provide their services to the same or similar clientele and perform other similar automobile lock-out related functions.

23. Upon information and belief, Defendant Corporations share centralized office functions such as bookkeeping, auditing, billing, and regularly share employees.

24. For example, although Plaintiff Edwards interviewed with, and was employed by ABC Towing, he received his compensation from King Locksmith.

25. By way of further example, King Locksmith issued Plaintiff Edwards' paychecks and Plaintiff, for federal tax purposes, was an employee of King Locksmith.

## II. Unified Operation and Common Control.

26. Upon information and belief, Defendants' various corporate officers and owners are a single family unit, affiliated by consanguinity.

27. Upon information and belief, total ownership of ABC Towing and King Locksmith is vested in a single family unit.

28. Upon information and belief, Defendant Corporations combine, unite, and organize their performance to accomplish a common business purpose.

29. Upon information and belief, Defendant Corporations operate with the same managers.

30. Upon information and belief, employees are interchanged between ABC Towing and King Locksmith and are assigned substantially the same duties at each establishment.

31. Upon information and belief, Defendant Corporations employ the same dispatchers, who preform work for both establishments.

32. At all times relevant, and upon information and belief, Corporate Defendant shared, and continues to share, operational control of ABC Towing and King Locksmith.

33. Upon information and belief, Defendant Biton comingles various assets with those of ABC Towing and King Locksmith.

34. Upon information and belief, Defendant Biton shared supervisorial duties of ABC Towing and King Locksmith employees.

35. A review of Georgia's Secretary of State online website reveals that Corporate Defendants have the same Registered Agent.

### III. Common Business Purpose.

36. Upon information and belief, ABC Towing and King Locksmith have the same business purpose, that is: to provide persons, businesses, and vehicles with lock-out and other roadside emergency services.

37. At all times relevant, Defendant ABC Towing portrayed the business and King Locksmith as a single unit by advertising and promoting King Locksmith on ABC Towing's online web-page.

38. Upon information and belief, Defendant Corporations have operated as a single unit attempting to obtain common profits to be shared and comingled by Corporate Officer Biton and the establishments' co-owners.

39. Because both entities conduct related activities, performed under unified operations or common control, and for common business purpose, Defendant Corporations constitute a single enterprise.

## FACTUAL ALLEGATIONS SHOWING THAT DEFENDANT CORPORATE OFFICER BITON IS AN EMPLOYER UNDER THE FLSA

40. At all times relevant, Defendant Biton qualified as an "employer" under 29 U.S.C. § 203(d).

41. At all times relevant, Defendants Biton held, and continues to hold, a significant ownership interest in ABC Towing, which has been, and continues to be, engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

42. At all times relevant, Defendant Biton acted directly and indirectly in the interest of ABC Towing in relation to Plaintiff Edwards.

43. At all times relevant, Defendant Biton exercised day-to-day control over the affairs of ABC Towing, including: approving promotions and raises; hiring and discharging employees; and establishing other terms and conditions of employment.

44. At all times relevant, Defendant Biton had a significant involvement in the supervision and payment of Plaintiff Edwards.

45. Defendant Biton directly and indirectly controlled, determined, and directed the day-to-day operations of ABC Towing.

46. Upon information and belief, Defendant Biton divided and assigned work assignments, and oversaw scheduling and compensation.

47. Upon information and belief, Defendant Biton had the ultimate power to make binding policy decisions for ABC Towing.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

48. Plaintiff Edwards was employed by Defendants as a tow truck driver from June 01, 2011, to May 05, 2012.

49. Plaintiff Edwards' primary duty was to provide towing, wrecking, and lock-out services to individuals.

50. At all times relevant, Defendants employed Plaintiff as their sole tow truck driver.

51. At all times relevant, Plaintiff Edwards worked a seven (7) day workweek and was compensated by a weekly, fixed payment of $650.00.

52. At all times relevant, Plaintiff Edwards was directed to maintain and keep Defendants' tow truck at Plaintiff's personal residence.

53. At all times relevant, because a municipal ordinance/regulation precluded Plaintiff from keeping the tow truck at his home, Plaintiff maintained the company tow truck at a local gas station, which was located approximately four (4) minutes from his residence.

54. Plaintiff was restricted from using the tow truck for personal use absent prior permission from Defendants.

55. At all times relevant, Plaintiff Edwards was on-call and engaged to wait for his employers' call to duty seven (7) days a week and twenty-four (24) hours per day.

56. Plaintiff Edwards generally received three (3) to four (4) tow calls a day, with eight (8) calls being the maximum and zero (0) calls a rarity.

57. The duration of each tow that Plaintiff performed was approximately two (2) hours.

58. Plaintiff has no prior knowledge when and what times he would receive a call and frequently received calls as early as 2:00 a.m. and as late as 11:00 p.m.

59. During Plaintiff's twenty-four (24) hour on-call shift, he was ordinarily contacted by a dispatcher at the cell phone number that he provided.

60. Generally, when the dispatcher was unable to reach Plaintiff on his first attempt, the dispatcher would call again repeatedly and leave numerous voicemail messages, sometimes in excess of fifteen (15) calls in a span of ten (10) minutes.

61. If the dispatcher's various attempts to reach Plaintiff ultimately failed, the dispatcher would then attempt to contact Plaintiff via his spouse's cell phone number.

62. Defendants routinely called Plaintiff's spouse in those instances that Defendants were unable to contact Plaintiff Edwards, calling at times in excess of five (5) times in a span of ten (10) minutes.

63. During his on-call schedule, Plaintiff was expected to respond to calls received from the dispatcher within ten (10) minutes and then arrive to the person in need of services as soon as possible, but in any event, within thirty (30) minutes.

64. Because Plaintiff maintained the tow truck at a local gas station, his response time was further restricted, thereby imposing a strict geographical restriction of not less than four (4) miles from his home.

65. If Plaintiff was unable to meet the thirty (30) minute deadline, he could not refer the call to a back-up driver, refuse to respond to the call, or ask for lenience with respect to the strict thirty (30) minute response deadline.

66. When Plaintiff complained that he was unable to respond to a call or that he could not respond timely, Defendants threatened Plaintiff with adverse employment actions, namely reprimands and termination of his employment.

67. At all times relevant, Plaintiff was required approximately two (2) times per month to "post" at various locations throughout metro Atlanta, Georgia for four (4) to five (5) hours, waiting to be dispatched to a person in need of towing services.

68. While "posting" Plaintiff Edwards was required to remain in the tow truck and could not perform personal activities.

69. Plaintiff ordinarily wore an ABC Towing uniform while driving the tow truck and was required to maintain a well-groomed appearance.

70. Plaintiff was required to remain within ten (10) minutes of his work related vehicle.

71. Plaintiff was required to carry and be reachable by cell-phone at all times and the phone was required to remain on ringing mode, thereby precluding Plaintiff from attending religious services and other establishments such as movie theaters.

72. No other employee shared Plaintiff's on-call status and duties.

73. Plaintiff vary rarely took vacations, if any, and rarely, if ever, had any days off from work.

74. Throughout Plaintiff's employment, he at no time towed a vehicle across state lines and there was no reasonable expectation that Plaintiff could be called upon to travel across state lines.

75. Throughout Plaintiffs employment with Defendants, there was no formal procedure to record the time that Plaintiff performed work.

76. Plaintiff's on-call time was used predominantly for the Defendants' benefit and the conditions imposed by Defendants restricted Plaintiff from using his time for personal pursuits.

77. Throughout Plaintiff's employment with Defendants, he routinely worked in excess of forty (40) hours per week.

78. Throughout Plaintiff's employment, Defendants systematically undercompensated Plaintiff for the number of hours actually worked.

79. Plaintiff was required to be compensated at a rate of one and one half times his hourly rate for each hour worked in excess of forty hours in any given pay period.

80. Defendants knew or should have known that the FLSA applied to Plaintiff.

### COUNT ONE: WILLFUL FAILURE TO PAY OVERTIME WAGES

81. Paragraphs one (1) through eighty (80) are incorporated herein by reference.

82. Plaintiff regularly worked in excess of forty (40) hours per week while employed with Defendants.

83. At all times relevant, Defendants failed to compensate Plaintiff at the overtime wage required by the FLSA.

84. Defendants, pursuant to their policies and practices, willfully refused and willfully failed to pay Plaintiff at the overtime rate required by the FLSA.

85. Defendants knew or should have known that the FLSA applied to Plaintiff.

86. Defendants failed to maintain and keep accurate time records of the hours worked by Plaintiff.

87. Defendants failed to compensate Plaintiff for all time worked.

88. Defendants led Plaintiff to believe that Defendants' policies conformed with the FLSA and the laws of the State of Georgia.

89. Defendants are jointly and severely liable to Plaintiff for his damages under the FLSA.

90. Plaintiff seeks damages in the amount of Plaintiff's unpaid overtime wages, liquidated damages as provided under the FLSA, and any other legal and equitable relief the Court deems proper.

91. Plaintiff seek recovery of attorneys' fees and costs to be paid by Defendants, jointly and severally, and as provided by the FLSA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Edwards respectfully prays that:

a. the Court enter judgment in favor of Plaintiff;

b. the Court enter judgment against Defendants that their violations of the FLSA were willful;

c. the Court issue an order holding Defendants jointly and severally liable to Plaintiff;

d. the Court award Plaintiff all unpaid overtime wages as provided for under the FLSA;

e. the Court award Plaintiff liquidated damages in an amount equal to the amount of his unpaid overtime wages, as provided for under the FLSA;

f. the Court determine all triable issues at trial; and

g. the Court award all other relief as the Court deems just and proper, included any and all equitable relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Preston Edwards hereby demands a jury trial on all issues triable by a jury.

**RESPECTFULLY SUBMITTED**:   June 20, 2012

| | |
|---|---|
| **MAYS & KERR LLC**<br>229 Peachtree Street NW<br>International Tower \| Suite 980<br>Atlanta, GA 30303<br>Telephone:  (404) 410-7998<br>Facsimile:   (877) 813-1845<br>Attorneys for Plaintiffs | /s/ Viraj Parmar<br>VIRAJ PARMAR<br>Ga. Bar No. 996884<br>viraj@maysandkerr.com<br><br>Jeff Kerr<br>Ga. Bar No. 634260<br>jeff@maysandkerr.com |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, counsel hereby certify that this pleading has been prepared using Times New Roman 14 point font, as approved by Local Rule 5.1C.

**THIS** 20th day of June, 2012

/s/ Viraj Parmar
VIRAJ PARMAR
Ga. Bar No. 996884
viraj@maysandkerr.com
